UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALFA ADHESIVES d/b/a SIMALFA, | Civil Action No.: 18-3689 (JLL) |
| Plaintiff, | OPINION |
| v. | |
| A. DUIE PYLE, INC., | |
| Defendant. | |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant A. Duie Pyle Inc.'s Motion to Dismiss Plaintiff Alfa Adhesive d/b/a Simalfa's Complaint and Compel Arbitration pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6). Plaintiff has submitted Opposition (ECF No. 8), which Defendant has replied to. (ECF No. 9). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court grants the Motion to Dismiss and Compel Arbitration.

### I. BACKGROUND[1]

The detailed facts underlying this action are not necessary to the disposition of the current application before this Court. As such, the Court sets forth only the relevant facts. Plaintiff is a New Jersey corporation that "is engaged in the business of adhesive products and services." (Compl. ¶ 1). Defendant is a Pennsylvania corporation that "is engaged in the business of shipping, logistics, and distribution services." (Compl. ¶ 2).

---

[1] This background is derived from Plaintiff's Complaint (ECF No. 1 ("Compl.")), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

Plaintiff manufactures a specific adhesive that is "extremely temperature sensitive" and becomes unsalvageable if its temperature goes below 32 degrees Fahrenheit. (Compl. ¶¶ 4-7). At some unknown point, Plaintiff contracted Defendant to ship this specific adhesive. (Compl. ¶ 5). Additionally, Plaintiff advised Defendant that the product was temperature sensitive and needed to be shipped in heated trailers in order to avoid freezing. (Compl. ¶ 10). Defendant required Plaintiff to pay an additional fee for this special shipping accommodation. (Compl. ¶ 11).

This action revolves around three shipments of Plaintiff's adhesive that were allegedly improperly shipped and/or handled while in transit to Plaintiff's customers. For example, in early January of 2016, Plaintiff shipped the adhesive to one of its customers through Defendant's shipping service. (Compl. ¶ 12). During the course of this shipment, the temperature dropped below the aforementioned critical temperature. (Compl. ¶ 16). As such, Plaintiff's adhesive was damaged requiring Plaintiff to send another batch to its customer and submit a claim to Defendant. (Compl. ¶¶ 18-21). Plaintiff alleges two additional, and nearly identical, incidents that required Plaintiff to replace the adhesive and submit claims to Defendant. (Compl. ¶¶ 22-42).

According to Plaintiff, Defendant has not responded to its demands for reimbursement for the ruined shipments. (Compl. ¶ 45). Hence, Plaintiff brought this one count complaint seeking damages pursuant to the Carmack Amendment, 49 U.S.C. § 14706. (Compl. ¶¶ 46-60).

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. <u>ANALYSIS</u>

Generally, an agreement to arbitrate a dispute "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 812 F.2d 91, 94 (3d Cir. 1987) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). The Federal Arbitration Act ("FAA") applies to arbitration clauses contained in contracts involving matters of interstate commerce. *See* 9 U.S.C. § 2; *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). When a party, whose claims are subject to the FAA, refuses to arbitrate same the district court must decipher whether the claims are arbitrable. *Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d

Cir. 2001) (citing *AT&T Tech., Inc. v. Commc'n. Workers of Am.*, 475 U.S. 643, 649 (1986)). "In the absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Tech.*, 475 U.S. at 654 (quotations omitted); *see Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").

"[F]ederal policy favors arbitration and thus a court resolves doubts about the scope of an arbitration agreement in favor of arbitration." *Medtronic*, 247 F.3d at 55 (citing *Moses H. Cone*, 460 U.S. at 24-25); *Zimmerman*, 783 F. Supp. at 868. The presumption in favor of arbitration guides district courts to refrain from denying a motion to compel arbitration absent certainty that the claims do not fall within the scope of an arbitration clause. *See Medtronic*, 247 F.3d at 55; *Mutual Ben. Life Ins., Co., v. Zimmerman*, 783 F. Supp. 853, 869 (D.N.J. 1992) ("There is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (internal citations and quotations omitted). However, "[i]f there is doubt as to whether such an agreement [to arbitrate] exists, the matter, upon a proper and timely demand, should be submitted to a jury." *Par-Knit*, 636 F.2d at 54. In considering a motion to compel arbitration, a court must engage in a two-step analysis: *it must determine first whether there is a valid agreement to arbitrate* and, if so, *whether the specific "dispute falls within the scope of that agreement." See Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009) (emphasis added); *Salvadori v. Option One Mtg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006).

Here, both parties agree that Plaintiff's Motor Freight Tariff ("Tariff") governs their contractual relationship. (ECF No. 6-1 ("Def. Mov. Br.") at 3; ECF No. 8 ("Pl. Opp. Br.") at 3-4). Additionally, neither party disputes the fact that the Tariff contains an arbitration clause and states, in relevant part, the following: "In handling loss and damage claims, any claim disputed by either [Defendant] or [Plaintiff] will be submitted to the Transportation Arbitration Board, National Motor Freight Council ... for disposition." (Def. Mov. Br. at 3). As such, the Court finds that a valid arbitration agreement exists between the parties. *Century Indem.*, 584 F.3d at 523). Thus, the only dispute between the parties, and the only issue for this Court to resolve on this application, is whether this arbitration clause encompasses claims under the Carmack Amendment. (*See generally* Def. Mov. Br.; Pl. Mov. Br.).

Defendant argues that the unambiguous language of the Tariff requires this claim to be submitted to binding arbitration. (Def. Mov. Br. at 3). Plaintiff argues that the agreement between the parties cannot require Plaintiff to arbitrate its claims because the Carmack Amendment mandates that a party waiving its right under same must do so explicitly and in writing, but the Tariff generally refers to arbitration without mentioning the Carmack Amendment. (Pl. Opp. Br. at 3-4). The Court disagrees with Plaintiff.

Plaintiff is correct in its assertion that Section 14101(b)(1) of the Carmack Amendment requires an express, written waiver of its rights under the Amendment. (Pl. Opp. Br. at 3) (quoting 49 U.S.C. § 14101(b)(1)). However, as Defendant correctly explains, Courts in this Circuit, along with New Jersey state courts, have held that no specific "form of words" is necessary to waive a statutory right and have the claim submitted to arbitration. *See, e.g., Nooman v. Comcast Corp.*, 2017 U.S. LEXIS 175549, at *21 (D.N.J. Oct. 23, 2017) (citing *Atalese v. U.S. Legal Servs. Grp., L.P.*, 2019 N.J. 430, 444-46 (2014) (finding that "[n]o particular form of words is necessary to

accomplish a clear and unambiguous waiver of rights."); *JPMorgan Chase & Co. v. Custer*, 2016 U.S. Dist. LEXIS 31595, at *15 (D.N.J. Mar. 10, 2016) (citing *Altese, supra*), *cert. denied*, 135 S. Ct. 2804 (2015); *see also Moule v. UPS Co.*, 2016 U.S. Dist. LEXIS 88270, at *34 (E.D. Cal. July 7, 2016) (finding "that because the Carmack Amendment governs all disputes related to the shipment of goods" requiring an arbitration clause to "reference the Carmack Amendment would be redundant and would cause confusion rather than provide clarity."). Accordingly, claims covered by the Carmack Amendment are arbitable even if the arbitration clause does not explicitly reference the Carmack Amendment, so long as the arbitration clause is in writing and unequivocal.

In light of the foregoing, the Court must dismiss Plaintiff's Complaint and compel the parties to resolve this dispute by way of arbitration. This is because there is no dispute that the parties entered into a valid agreement and that said agreement contained a binding arbitration clause. Moreover, while the arbitration clause does not specifically reference the Carmack Amendment, said clause explicitly states that *any and all* claims arising out of the contractual relationship must be arbitrated. Plaintiff's claims stem directly from the alleged improper shipping of its adhesive pursuant to said contract. As such, this action may only be resolved in a manner consistent with the binding arbitration clause.

### IV.  CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss is granted. An appropriate Order accompanies this Opinion.

DATED: May 22, 2018

JOSE L. LINARES
Chief Judge, United States District Court